## Case No. 15,545.

### UNITED STATES v. KUHN.

[4 Cranch, C. C. 401.] [1]

Circuit Court, District of Columbia. Nov. Term, 1833.

ACCOUNT — EVIDENCE — PRESUMPTIONS FROM SILENCE—REBUTTAL OF PRIMA FACIE EVIDENCE — ACCOUNTS OF PAYMASTER OF MARINE CORPS — PAY AND EMOLUMENTS — AUTHORITY OF SECRETARY OF NAVY.

1. An account, although duly authenticated according to law, is not, per se, evidence of a balance due on a former account, nor of items transferred from the account of any other person, nor of items recharged, which had before been credited.

2. From the fact that the defendant objected to certain items of debit in the account, and was silent as to the other items, the jury may, and ought to infer, that he acquiesced in the items not objected to, unless they should be satisfied that he did not so intend, the burden of proof of which is on the defendant.

3. The jury may infer that the defendant claimed no credits but what are stated in the "reconcilement," and ought so to infer, unless the defendant can show that there were other credits claimed by him, or to which he is entitled.

4. If the United States produce in evidence the defendant's account current, showing a balance in his favor, he is entitled to a verdict in his favor, unless the plaintiff shall prove errors, or omissions in that account, which shall turn the balance the other way.

5. To rebut such prima facie evidence, it is not sufficient to show, that certain claims of the defendant were suspended by the proper accounting officers, on the coming in of the accounts current containing them, and were subsequently disallowed, and that no such claim had been previously allowed by the secretary of the navy.

6. The defendant claimed a credit of $4,480.13, for commissions at 5 per cent. on money disbursed by him for the quartermaster's department.

7. The amount of the disbursement was proved by the accounting officer of the treasury, and

[1] [Reported by Hon. William Cranch, Chief Judge.]

upon the back of the document produced by the United States, and containing the defendant's claim for that credit, was an indorsement by the fourth auditor, dated March 2, 1829, that he had been verbally directed by the then secretary of the navy, to allow the claim, it being for extra official service.

8. The court *held*, that, to rebut this evidence, it was not sufficient to show that a subsequent fourth auditor referred the claim to a subsequent secretary of the navy, who rejected it; and that there was no evidence that such commissions had been allowed in any like case, and that no precedent could be found for it in the proceedings of the department.

9. And the court also *held*, that, in order to rebut the prima facie evidence arising from the production and giving in evidence by the United States of the defendant's account containing the charge, it is incumbent on the United States to satisfy the jury that the charge was such as the secretary of the navy ought not to have allowed.

10. The court instructed the jury, in effect, that if the secretary of the navy did not order the fourth auditor to allow the specific sum claimed, but only to make such allowance as, on examination, he should find to have been made in similar cases, they should, from a consideration of all the evidence, make such allowance as they should find had been usually made in similar cases, and if it should appear that no such allowance had been made in any similar case, then to make such as they should deem reasonable.

11. And the court further instructed the jury, in effect, that the secretary had a right to order the fourth auditor to make such allowance; and if made by him, under such order, it amounted, in law, to an actual allowance by the secretary himself.

12. And, further, that if the secretary of the navy did authorize the allowance of the claim, and the accounting officers omitted to pass the same, without any default of the defendant, then the defendant is entitled to such allowance, unless it was made by fraud, imposition, or misapprehension of the facts of the case.

13. The paymaster of the marine corps was not, by law, entitled to the pay of a major in the general staff, nor of a major in the cavalry from November, 1821, to October, 1830.

14. Up to the year 1828, he had received the pay and emoluments of a major in the infantry, and this was continued to him until 1831, by the resolution of May, 1830.

15. The books of account of a paymaster are to be considered so far public books, as to authorize the United States to use them in evidence.

16. After a credit has been given by the United States, and the account settled, it is not competent for the United States to open the account and revoke such credit, unless it were originally given by fraud, imposition, or mistake.

[Cited in U. S. v. Collier, Case No. 14,833.]

This was an action brought by the United States for the balance ($21,966) against the defendant [Joseph L. Kuhn] as paymaster of the marine corps.

Mr. Key, for the United States, offered an account stated in the treasury department, authenticated according to law, and commencing with a balance of a former account.

Mr. Coxe, for defendant, objected that it was not evidence to charge the defendant with that balance. This point was decided in the case of U. S. v. Jones. 8 Pet. [33 U. S.] 375, by the supreme court of the United

States at their (then) present term. See, also, the case of U. S. v. Buford, 3 Pet. [28 U. S.] 12.

Mr. Key, in reply. "The reconcilements" are evidence, because they are settlements by the proper accounting officers; and are admissions by the defendant that he claims so much, and that so much has been rejected, and so much allowed.

THE COURT (nem. con.) decided that the account was not admissible evidence, per se, to charge the defendant in this action. It consisted only of balances per report No. 2,436, &c., and two items, to wit:

| | | | | |
|---|---|---|---|---|
| To Charles Grymes, Lt. Marines, for.. | $13 65 |
| To A. A. Nicholson, " " ".. | 90 00 |
| | $103 65 |

These two items were understood as having been charged first to Grymes and Nicholson, and transferred to the debit of Kuhn.

Mr. Key then offered the various accounts settled at the treasury, from 1821, when Captain Kuhn was appointed paymaster, to 1830 (14 in number). No objection being made, they were read to the jury, constituting a continuing account.

Mr. Coxe objected to the following item in the account No. 10, which had been passed to the credit of Kuhn by the officers of the treasury in 1823: Amount of stoppages for allowances made by his predecessor, Mr. Desha, $60,667.92. And to the following item in the account No. 11: To Desha, payrolls recharged, which had been credited in 1823, $9,925.89. And prayed the court to instruct the jury, that the said accounts Nos. 10 and 11 are incompetent and insufficient of themselves to establish any of the items of charge therein contained against the defendant of $7,564.13; and $3,455.44 in the first page of the account No. 10; and $3,657.94 in the account marked N. S. 1325, and other similar items, which are not charged against the defendant as money paid to and received by him from the treasury.

Which instruction THE COURT gave (nem. con.) upon the authority of the case of U. S. v. Orr's Adm'r [8 Pet. (33 U. S.) 375], at the (then) present term of the supreme court of the United States. To this opinion no exception was taken.

Mr. George Gillis, an accounting officer of the treasury department, having been examined on the part of the United States to show that the "general reconcilement" exhibited the whole of the matters in controversy, and that the defendant acquiesced in all the charges against him except certain disputed items,

Mr. Butler, Atty. Gen., prayed the court to instruct the jury: (1) That from the evidence aforesaid, the jury may infer and presume that the defendant admitted all the charges to the 8th of October, 1830, except those specially excepted to as stated in the reconcilement annexed to the account No. 11; and that unless the defendant shall sat-

isfy the jury that he did not intend to make such admission, it will be their duty so to infer and presume. (2) That from the evidence aforesaid the jury are at liberty to infer and presume that the defendant claimed no credits other than those allowed to him in the said accounts or stated in the reconciling statement annexed to the said account No. 11; and unless the defendant shall satisfy the jury that he did intend to insist on other claims before exhibited and rejected and not included in the last reconciling statement, it will be their duty so to infer.

This opinion was given with the understanding that the defendant's account current of the 8th of October, 1830, was in the proper office in the treasury department; but it appearing that it could not be found, the court required the United States to prove the debit side of the account by the original vouchers filed in the department.

Mr. Coxe then contended that as the United States had produced the defendant's accounts current, in evidence, which contained the charge of the disputed items, they have so far admitted their correctness as to take upon themselves the burden of disproving them; and prayed the court so to instruct the jury; and cited Goodenow v. Travis, 3 Johns. 427; Hotchkiss v. LeRoy, 9 Johns. 141; Hopkins v. Smith, 11 Johns. 161, Whitwell v. Wyer, 11 Mass. 10; Morris v. Hurst [Case No. 9,832]; Bell v. Davidson [Id. 1,-248]; Randall v. Blackburn, 5 Taunt. 245; Id. 1 Serg. & L. 92.

The attorney general admitted the principle as to matters of fact; but not as to matter of law; nor as to government cases. This court, and the supreme court have so decided in the cases against Orr's administrators, so far as regards the defendant. They permitted him to rely on the account of the United States for the credits therein given to him, without obliging him to admit the debits against him in the same account. But the government does not rely on the defendant's account alone; they have also the testimony of Mr. Gillis. The government have not admitted this item (the charge of five per cent. for commissions).

One argument adduced by Mr. Jones in those cases was that the defendant there had surrendered his vouchers, which differed from the common case. Here the United States objected to the claim when first presented, and ultimately rejected it.

Mr. Coxe's prayer, and the objection of the plaintiffs, was as follows: The defendant prayed the court to instruct the jury that, as the United States had given in evidence the accounts current of the defendant, by the last of which it appeared that there was a balance of $9,107.51 in favor of the defendant, he is entitled to the verdict of the jury upon such evidence, unless the plaintiff shall further prove errors or omissions in said accounts which shall destroy

such balance in his favor, and show, after such rectification, a balance against him in favor of the plaintiffs. To which the plaintiffs objected, because the accounts settled by the proper accounting officers, and before produced in evidence by the plaintiffs, show, as they contend, that certain of the credits claimed in the defendant's accounts current, amounting in the whole to a greater sum than the said balance, were suspended by the proper accounting officers, on the coming in of the said accounts current containing them, and were subsequently disallowed; thereby rebutting any presumption that such credits were ever assented to by any officer authorized to act for the plaintiffs; and showing affirmatively that no such assent was given.

THE COURT (THRUSTON, Circuit Judge, doubting) gave the instruction thus prayed by the defendant.

Mr. Key, for the United States, then took up the first disputed item; being a charge, by the defendant, of $4,480.13 for commission at five per cent. on money disbursed by the defendant for the quartermaster's department, and produced the two vouchers which had been presented to the accounting officers of the treasury, namely, a statement of the amount disbursed, and a claim of the commission, and an indorsement thereon in the handwriting of T. Watkins, then fourth auditor of the treasury, signed T. W., and dated March 2, 1829, saying that he had been verbally directed, by the then secretary of the navy, to allow the claim, it being for extra official service. The amount of the disbursement was proved by Mr. Gillis, one of the accounting officers. Mr. Kendall, who succeeded Mr. Watkins as fourth auditor, testified that he referred the claim to Mr. Branch, the secretary of the navy, about the 21st of March, 1829, who rejected it; and that he did not know that any commission of five per cent. had been allowed in a like case, and could find no precedent for it in the proceedings of the department.

The United States rested their case here.

Mr. Coxe, for the defendant, prayed the court to instruct the jury.

And THE COURT (nem. con.) after argument, did instruct them, that the evidence so adduced by the plaintiffs is not sufficient to rebut the prima facie evidence that the defendant is entitled to his credit for the item of $4,480.13.

THRUSTON, Circuit Judge, was understood to be of opinion that the indorsement of T. Watkins, then fourth auditor, upon the defendant's vouchers, produced in evidence by the United States, was evidence of the allowance by Mr. Southard, then secretary of the navy, and that it was the final action of the proper officer upon the subject, and that it could not be revoked by Mr. Branch, his successor.

CRANCH, Chief Judge, was of opinion

that the indorsement so produced by the United States was evidence that the claim had been allowed by Mr. Southard, then secretary of the navy; but he was also of opinion that the allowance was liable to be revoked by his successor before the item had been actually carried to the defendant's credit in account by the proper accounting officer; and that it had been so revoked; but that the mere rejection of the claim by the government is not sufficient to rebut the prima facie evidence of the defendant's own account produced in evidence by the United States. Nor was that rejection, together with the other evidence given by the United States, sufficient for that purpose.

The attorney general, having, without objection, read Mr. Southard's deposition, made the following prayer to the court: "The deposition of Samuel L. Southard having been read in evidence, the counsel of the plaintiffs insisted that the same conduced to prove that the said S. L. Southard, as secretary of the navy, had never, in point of fact, instructed the fourth auditor, T. Watkins, to allow the defendant the additional compensation charged in the aforesaid vouchers, Nos. 219 and 220, as stated in the memorandums indorsed on the said vouchers, but had only authorized him to make such allowance as he, the said fourth auditor, should find, on examination, to have been allowed in similar cases; and that, if the jury should believe the deposition of the said S. L. Southard, to give the correct version of his direction to the said fourth auditor, it would be their duty to consider the charges for commissions contained in said vouchers, as open to inquiry, and, upon all the evidence applicable thereto, to make such allowance only as they should find had been made in similar cases; and prayed the court so to instruct the jury."

Mr. Coxe, for defendant, then prayed the court to instruct the jury, "that it is incumbent upon the plaintiffs, in order to rebut the said prima facie evidence, in addition to the fact that the item of claim, in question, never had been allowed by a secretary of the navy, to show, to the satisfaction of the jury, that the said claim was one which he ought not to allow; and was not authorized, under the usage which has been proved before the jury, to allow."

The counsel of the United States, after the examination of Mr. Southard, here in court, varied their prayer thus: "The deposition of S. L. Southard having been read, and his testimony, as above stated, having been given to the jury, the United States prayed the court to instruct the jury, that, if they should believe, from the evidence, that the said S. L. Southard, as secretary of the navy, had never, in point of fact, instructed the fourth auditor, T. Watkins, to allow the defendant the specific compensation of 5 per cent. charged in the aforesaid vouchers, Nos. 219, 220, but had only directed him to make such al-

lowance as he, the said fourth auditor, should, on examination, find to have been allowed in similar cases, it would then be their duty to consider the charges for commissions, contained in said vouchers, as open to inquiry; and, upon all the evidence applicable thereto, to make such allowance only as they should find had been usually made in similar cases; or, if it should appear that no such allowance had ever been made in any similar case, then such as they should deem reasonable and just, under all the circumstances of the case."

THE COURT (nem. con.). but MORSELL, Circuit Judge, doubting, gave this last instruction, as prayed; and also gave the above instruction prayed by Mr. Coxe, excepting the last clause in these words, "and was not authorized, under the usage which has been proved before the jury, to allow."

Mr. Coxe then prayed the court to append to the instruction last given, at the prayer of the United States, the following instruction, namely: "But, if the jury shall believe, from the said evidence, that Mr. Southard, as secretary of the navy, did direct the fourth auditor to allow the said claim, specifically, to the extent of 5 per cent. on the amount of said disbursements, as claimed in said vouchers; or, having decided that the said defendant was entitled to an allowance for said services, and that the commission of 5 per cent. was a proper and adequate compensation for such services; and referred to the auditor to examine whether said allowance was in conformity with precedents in other cases, for like extra official disbursements by officers belonging to, or attached to, the navy, by the direction or sanction of the secretary; and if the jury shall further find, from the said evidence, that, for similar disbursements of an official character, settled in the said auditor's office, sanctioned and allowed by the secretary, the commission of 5 per cent. had been allowed, that then the said auditor was authorized to make such allowance, and to make such indorsements as appear on the said vouchers: and that such indorsement amounted, in law, to an actual allowance by the secretary himself."

Which instruction THE COURT gave (THRUSTON, Circuit Judge, dissenting).

Mr. Coxe then prayed the court to instruct the jury, that, if they should believe, from the aforesaid evidence, that the said S. L. Southard did authorize and direct the allowance of the claim stated in said vouchers, Nos. 219 and 220, and that the accounting officers omitted to pass such items, upon such allowance, without any default of the defendant, then the said defendant is entitled to the allowance, unless, in making such allowance, the plaintiffs shall satisfy the jury that the said secretary was induced to make it, by fraud, imposition, or misapprehension of the facts of the case.

Which instruction THE COURT gave

(CRANCH, Chief Judge. dissenting). because he thought the act of Mr. Southard was revocable by his successor; and was revoked by his successor before the credit had been given in any statement of the account by the accounting officers of the department, and before the credit was given upon the books of the department; and that the United States, therefore, were not bound by the act of Mr. Southard, which was thus revocable by himself or by his successor, and was so revoked. •

Mr. Key, for the United States, then prayed the court to instruct the jury, that, if they believed, from the evidence, that Mr. Southard, the secretary of the navy, by his instructions to the fourth auditor, did not designate any specific commission to be allowed to the defendant for the disbursement stated in said vouchers, but left it to the fourth auditor to examine the cases of such allowances, and to allow to the defendant such commission as had been allowed to other officers for such disbursements, then such authority could be lawfully given to the said fourth auditor, and his indorsement on said vouchers is not binding on the United States.

Which instruction THE COURT refused to give (THRUSTON, Circuit Judge. dissenting).

The next class of charges, in the defendant's account, consisted of claims for compensation, as paymaster of the marine corps.

Mr. Key, for the United States, contended that the only law under which the defendant could claim compensation was the act of congress of the 16th of April, 1814. 3 Stat. 124.

Mr. Coxe, for defendant, contended that the defendant was entitled to the pay and emoluments of a major of cavalry, or a major of the general staff. under the acts of the 16th of May. 1812. (2 Stat. 735), and the 24th of April, 1816; the same having been allowed to Mr. Satterlee Clark. a district paymaster in the army of the United States, by the verdict of a jury. and the judgment of the circuit court of the United States for the Eastern district of New York, in the year 1827. Upon the authority of that case Mr. Southard allowed the same compensation to the defendant, as appears by the voucher No. 215, with Mr. Watkins's indorsement thereupon. The officers of the marine corps, not being satisfied with the compensation allowed by the act of April 16. 1814. congress, by a joint resolution. on the 29th of May, 1830. continued the old rates of compensation till the 28th of February, 1831. and made a special appropriation for the extra emoluments. See, also. the act of 2d March, 1831, c. 57 (4 Stat. 460). and the resolution of 25th May, 1832 (Id. 605); Cong. Doc. No. 107, 28th May, 1829; the auditor's report, printed by order of the house of representatives, 1830. pp. 6 and 7; Navy Rules 1832, p. 40. c. 45; Doc. 121. p. 7; the fourth auditor's report.

The attorney general referred to Doc. 121, p. 1; letter from the secretary of the navy, of 29th May, 1830; report of the fourth auditor; and statement D, and the remarks in p. 7. Mr. Kendall testified that the defendant had never received more than the pay and emoluments of a major in the infantry, and never claimed more until the decision in the case of Satterlee Clark.

Mr. Coxe, for defendant, then prayed the court to instruct the jury "that if they should believe the evidence aforesaid, the defendant is entitled to the several credits claimed in the vouchers Nos. 332 and 333," namely, the pay and emoluments of a major in the cavalry.

Which instruction THE COURT (MORSELL, Circuit Judge, doubting) refused to give.

CRANCH, Chief Judge. The defendant, as paymaster of the marine corps, claims, in his account with the United States, a credit for the pay, subsistence, emoluments, and allowances of a major in the general staff of the army, from the 20th of November, 1821, to the 8th of October, 1830, when he ceased to be paymaster. Up to the 1st of January, 1828, he received credit in his accounts for the pay and emoluments of a major in the infantry. In the year 1827, Mr. Satterlee Clark, who had been a district paymaster in the army of the United States, in a suit brought by the United States against him in the Eastern district of New York, obtained, by the verdict of the jury and judgment of the court, credit for the pay and emoluments of a major in the general staff. The present defendant then exhibited a like claim against the United States; and on the 2d of March, 1829, Mr. Southard, then secretary of the navy, verbally instructed the then fourth auditor, Mr. Watkins, to allow it, on the ground that the paymaster of marines was entitled to the pay of a district paymaster, which, in Clark's case. was decided to be that of a major of the general staff. as appears by the indorsement of Mr. Watkins upon the voucher No. 215. Nothing further appears to have been done until a change had taken place in the offices of the secretary of the navy and fourth auditor, when the claim was rejected, the new secretary and auditor being of opinion that the defendant was only entitled to the pay and emoluments specially provided for in the act of congress of the 16th of April, 1814 (3 Stat. 124), by which the adjutant, paymaster, and quarter-master of the marine corps. were to "receive thirty dollars per month in addition to their pay in the line, in full of all emoluments." This decision of the new secretary and auditor having been made a subject of complaint to congress by the officers of the marine corps, a joint resolution was passed on the 29th of May, 1830, "that the pay, subsistence, emoluments, and allowances, received by the officers of the marine corps previous to the 1st of April, 1829, be, and the

same is hereby directed to be continued to them from that date up to the twenty-eighth day of February, one housand eight hundred and thirty-one." 4 Stat. 430. This resolution confirms and continues the allowances that had been received by the officers of the marine corps previous to the 1st of April, 1829; and comprehends the whole period of the defendant's accounts. It seems, therefore, unnecessary to inquire whether the decision of the new secretary and auditor was or was not correct; and the only question which can arise, is a question of fact, to wit, what were the pay, subsistence, emoluments, and allowances received by the officers of the marine corps, previous to the 1st of April, 1829, so far as regards the paymaster. Up to the year 1828, he had received the pay, &c. of a major in the infantry; and no paymaster of the marines had, on the 1st of April, 1829, received more. On that day the defendant had never received the pay, subsistence, emoluments, or allowances of a major of the general staff; nor does it appear that any paymaster of the army had ever received such pay, &c., except Mr. Clark, whose case had been judicially decided. The practice of the department had not been changed by the decision of that case. The words in the resolution, "allowances received," must mean, sums of money allowed and paid to the officers, or passed to their credit in account. The order of Mr. Southard, then secretary of the navy, to the then fourth auditor, to allow the defendant's claim, was not, as it seems to me, an allowance received by the defendant, within the meaning of the resolution; nor does it appear that that order was known to congress when the resolution was passed. That resolution received the signature of the president on the 29th of March, 1830. It does not appear what documents were before congress in relation to the pay. &c. of the officers of the marine corps previous to the 1st of April, 1829. The letter of the fourth auditor to the secretary of the navy of the 28th of May, 1829 (Document No. 107), was not ordered to be printed by the house of representatives till the 25th of May, 1830; and the letter of the fourth auditor of the 28th of May. 1830 (Document No. 121), was not read and laid on the table till the 29th of May, 1830, the very day on which the joint resolution was approved by the president; so that it is not probable that either of those documents was the foundation of the resolution, and, therefore, cannot be considered as having any bearing upon the construction which ought co be given to that resolution. They may. however, in connection with the testimony of Mr. Kendall, be considered as evidence to show what was the pay. &c., received by the officers of the marine corps previous to the 1st of April, 1829. If no paymaster of the marine corps had, previous to that day, received the pay, subsistence. emolumen s, and allowances of

a major of the general staff of the army, it seems to me very clear that the defendant is not entitled to claim them under that resolution; and even if the court should be of opinion that he would have had a right to claim them if that resolution had not been passed, although he had not received them before that day, I doubt whether he could, after that resolution, claim more than the pay, &c. which he had received previous to that day. The joint resolution does not profess to affirm that the allowances; previously received, were at the time, authorized by law; but to sanction what had been done, and to continue the same pay, &c. for a limited time. If, therefore, the jury should be satisfied by the evidence, that the pay, subsistence, emoluments, and allowances, received by the defendant as paymaster of the marine corps, previous to the first of April, 1829, were those of a major in the infantry, I should instruct the jury that the defendant is only entitled to claim the same pay, &c.; and is not entitled to claim the pay, &c. of a major of the general staff. It has been suggested that the estimates upon which the appropriations for the marine corps for the years 1831, 1832 and 1833, were based, state the pay of the paymaster at $60 a month, and four rations; and that that statement sanctions the defendant's claim. I doubt, however, whether, when a salary is fixed by a law such as that of the 16th of April, 1814, a simple appropriation, based upon an estimate in which a higher salary is stated, can be considered as repealing the law which fixed the salary. Suppose an officer's pay to be fixed, by the law which creates the office, at $1,000, and an appropriation for the civil list should be made, founded upon an estimate in which the salary should be stated at $2,000, would the officer be entitled to receive the $2,000? Or, suppose the estimate should state it to be only $500, would he not be still entitled to the other $500? But, however that may be, the estimates referred to, are all subsequent to the time for which the defendant claims, and, therefore, cannot affect the case. It may be observed, also, that those estimates are made by the paymaster himself, who would, of course, make them conformable to the law as he understood it; and as there was a claim for $60 a month, it was, perhaps, proper to state enough to cover it. I cannot, therefore, agree to give the instruction prayed by the defendant's counsel.

THRUSTON, Circuit Judge. By the admission of the counsel of the United States, and of the defendant, the only question, now left for the court to decide, is, what were the pay and emoluments of the paymaster of the marine corps, previous and up to the 1st of April, 1829; or rather, was he then entitled to those of a major of cavalry, or of a major in the infantry? It seems to be admitted by the counsel for the United States, that, by the resolution of congress

of the 29th of May, 1830, which reversed the construction of the fourth auditor, who restricted the pay and emoluments of the paymaster to the limits of the act of the 16th of April, 1814 (3 Stat. 124), inasmuch as the pay and emoluments of the paymaster had, previous to such decision of the fourth auditor, been allowed in the navy department as those of a major of infantry, and credit given on the books of the department therefor, that such allowance cannot now be questioned; but they deny that, in addition to the pay and emoluments of a major in the infantry, the defendant is entitled to those of a major of cavalry, which addition constitutes the difference between the parties now to be adjusted by this court and jury. It becomes the duty of the court carefully to examine the acts of congress, to see how far the claim of additional compensation can be sustained. Although, by the decision of the supreme court, and the admission of the counsel of the United States, the allowance of the pay and emolument as a major of infantry as settled and credited on the books of the navy department, is no longer open to examination by this court, not because such allowance was sanctioned by the laws, but because it had been actually made and credited to the defendant on the books of the navy department, yet we have the power, and it is our duty to determine how far the accounting officers of the navy department were warranted, previous to the resolution of congress of the 29th of May, 1830, by the then existing enactments of congress on this subject, to have made such allowance; and should this court be of opinion that they ought not to have exceeded the rate prescribed by the act of the 16th of April, 1814 (3 Stat. 124), then the matter now in dispute is settled, and the claim of the defendant for further compensation than what has been allowed, must be overruled. The statute of the 16th of April, 1814, is certainly too clear to admit of any doubt in its construction; it applies specially to the marine corps; admits of no latitude of construction, and fixes the pay of paymasters of the marine corps.

The question then arises, has this statute been directly or impliedly repealed by any subsequent statute? It has been attempted, on the part of the defendant, to show that the compensation, provided by the act of the 24th of April, 1816 (3 Stat. 297), of paymasters of the army was applicable to, and ought to be extended to paymasters of the marine corps; and that this compensation was equivalent to the pay and emoluments of a major of cavalry. We will first examine the prior branch of this proposition, namely, that the paymasters of the marine corps are, by reasonable construction of this statute, embraced in the enactment which fixes the compensation of paymasters of the army; if so, the statute of the 16th of April, 1814, must be virtually repealed, not expressly, but by necessary inference or implication; and in support of this construction it was contended, that the marine corps is part of the army in fact; that when required to do service on land, they are so to all intents and purposes; that they are subject to the rules and articles of war, and that various statutes recognize this identity in regard to general provisions, where there is no special declaration or indication of any intention to discriminate between them; that the defendant was compelled to give bond as paymaster of the marine corps, pursuant to the requisition of the sixth section of the said act of the 24th of April, 1816 (3 Stat. 297); that the law had always received this construction by the accounting officers of the navy department, since the defendant received the appointment of paymaster, &c., and other arguments of equal weight and importance. With a view to estimate the value of these arguments, I have examined the several acts on this subject, as far as time would permit, and will state the result of my investigations.

In the first place the act of the 1st of July, 1797, "providing a naval armament" (1 Stat. 523), assigns to each ship, besides mariners, &c., a certain number of marines. The duty of the marines is exclusively maritime; for sea service only. By this act they have no connection with the army, in character or duty to be performed. Here they are not amphibious. The next act on the subject of the marine corps is that "for establishing and organizing a marine corps," of the 11th of July, 1798. 1 Stat. 594. From the first enacting clause an argument has been drawn from the words "in addition to the present military establishment, there shall be raised a corps of marines," &c., that marines became, in fact, a part of the military establishment; or, at any rate they established such a harmony, and blending of the two corps, that certain general provisions relating to one, (that is, the army,) embraced the other, and that this consentaneousness or harmony was materially strengthened and confirmed by the last section, authorizing the president to employ the marines on shore, &c. (see section 4). But it is a most violent interpretation, it seems to me, to consider the words, "in addition to the present military establishment," as having any force in identifying the two corps in character or circumstances. The marines were a body known to the law by the act of July 1, 1797, as a purely maritime or naval force; and the enlargement of that force, or assigning to them duties on shore, does not necessarily identify them with the army, and those words could not have the effect of constituting a force, governed by different rules and regulations, and destined to a service unknown to, and incompatible with, the character and duties and services of the army, a part of that army. The marines are certainly a military force, as well as the

army, and are in addition to the then exist-ing military establishment. It is to be re-marked, also, that although the marines may be compelled to do duty on shore, it is no part of their ordinary duty, but at the discre-tion of the president, as in case of the inva-sion of the territories of an enemy's coast, by a naval force the seamen may be com-pelled to do the duty of soldiers or marines, at the discretion of the commander of the ship or squadron. But, whatever inferences might be drawn from these expressions, the act of the 16th of April, 1814, annihilates them, because it legislates on the very mat-ter in question, and makes a special provi-sion for paymasters of the marine corps which admits of no sort of doubt. It pro-fesses to embrace the marine corps only. Here all former doubts, all inferences and constructions are done away. The compen-sation of the paymaster of the marine corps is fixed so clearly, that, but for the joint res-olution of congress of the 29th of May, 1830, it must be now in full force, unless it has been repealed by some subsequent statute directly or expressly, or by some strong and necessary implication; for I take it for a certain and established rule of construction, that a statute distinctly and clearly express-ing the intention and meaning of the legisla-ture on any particular point, cannot be re-pealed unless by a subsequent statute equal-ly clear and distinct, or by necessary impli-cation or inference with which the previous statute cannot be reconciled; but a subse-quent statute legislating upon a different subject, and where there is such an incon-gruity between the objects of legislation, as that of the army and marine corps, where, if there be any harmony or identity it is in certain points only, one of which is that they are both military establishments; and an-other, much relied on, is, that the marines may (not by the direction of law, but by the will of the president, at his discretion, and which, therefore might have never been invested with this feature of congruity or identity,) be compelled to serve on shore; for from this provision, that the president may order them to do duty on shore, is the strongest argument drawn that they became identified with the army. But unless the president does order them to do duty on shore, the analogy, or identity is done away; then it depends on the exercise of the presi-dent's will whether the ground of identity is to vest or not. If he does not order the marines to serve on shore, then they are no longer of doubtful character; no amphibi-ous men, but purely of a maritime character, distinct from the army essentially in numer-ous particulars, set out more at large by the fourth auditor in his report of ——, and on which, as they are known to the counsel on both sides I make no remarks, except that I thought they had much weight. I do not see much more reason to consider the character of marines transformed into that of

soldiers by their liability occasionally to serve on shore, than that seamen compelled some-times to serve on land with marines should be transformed into that of marines. We find distinct statutes concerning the army and marine corps. The pay of the officers of the marine corps is fixed by statutes con-fined to the marine corps only; of the army, by statutes relating to the army only. In fact, I have seen no act professing any thing like general legislation in the same act over both branches of our national defence, ex-cept in some special provision, where it is clear that congress meant to extend them to both bodies. There are numerous statutes relating to the army, particularly during the last war, and comparatively few relating to the marine corps; and to consider such gen-eral expressions as the words, "in addition to the military establishment," or the provi-sions of the "liability of the marines to serve on shore at the will of the president," as so identifying the two corps, as that the provision for the compensation of the pay-master of the army should extend to the paymaster of the marine corps also, and thereby repealing the previous statute of April 16, 1814, especially fixing the compen-sation of the paymaster of the marine corps, is extending the license of construction fur-ther than I have known; for such, if I un-derstood, is the argument; for, having in the manner I have stated, fixed, as the de-fendant's counsel supposed, the analogy, congruity, or harmony, and, indeed, identi-ty, or whatever it is, between the army and marine corps, he then comes to the act of the 24th of April, 1816, "for organizing the general staff, and making further provision for the army of the United States." Army, observe; not "the military establishment;" army proper, as appears evident from its general enactments; and it is the third sec-tion of this act which fixes the pay of the paymaster of the army under which the de-fendant has thought himself justified in claiming his pay as paymaster of the ma-rine corps, as growing out of and sanctioned by this third section; that the said section included the paymaster of the marine corps.

Now it does seem to me, that, as well from the title which exposes the object of the statute, as all the enactments throughout, there is no ground for extending any of its general provisions to the marine corps. It would be too tedious to enumerate the mul-tiplied evidences of this; but we will take up the most material section, the third, which legislates on the very matter in hand, to wit, the compensation of paymasters. They are to receive the pay and emoluments of major, and therefore the defendant is en-titled to the pay and emoluments of ma-jor; and this section repeals the special stat-ute of 1814. Now is it not evident, to say nothing of other objections, that this section cannot be construed to have embraced pay-masters of the marine corps, because it is

provided in the fourth section that regimental and battalion paymasters shall make correct reports to the paymaster-general once in two months, on pain of being dismissed? Now the paymaster of the marine corps does not make his reports to the paymaster-general, nor is he under his jurisdiction; but his reports, if he ever makes any, and his accounts are settled to and with the navy department. The compensation here, then, was intended exclusively for such paymasters as were accountable to the paymaster-general; that is, paymasters of the army proper; and such a construction seems warranted by the whole context throughout. But it seems the defendant gave the bond required by the sixth section. How far the secretary was right in demanding it, is not material. The generality of the expression, "all officers of the pay department," &c., might seem to justify such an exaction from the defendant; but if it did, it may grow out of the universality of the import of the word "all;" but in my conception, the provision is coextensive only with the provisions of the act, and relates to paymasters only of the army proper. But it is immaterial whether the secretary acted right or wrong in requiring an official bond from the defendant as paymaster of the marine corps; his construction of the act does not bind us, more than it binds the defendant, who is now asking this court to reverse the judgment of the secretary on the construction of the very act, when he is at the same time invoking that same judgment in aid of the construction he urges before this court.

Again, the case in New York, U. S. v. Clark [unreported], has been cited, where, by the verdict of a jury, the pay of a major of cavalry was allowed to the defendant, who was a district paymaster of the army. We have not the record before us, and therefore cannot be certain that the judge settled any point of law in the case. If he had so settled the amount of pay, I confess, without having his reasons before me, I am utterly at a loss to imagine on what grounds he so decided. Why he should, if he did so, take the pay of a major of cavalry as the measure of compensation for a paymaster, when the law expressly fixes it by the pay of a major of infantry, I am unable to discern. This decision of the New York judge (if he gave such an opinion,) is said to be balanced or neutralized by the opinion of Judge Peck, in Missouri; and, as the case is now before the supreme court, the matter is likely soon to be settled, and will, I suppose, be the rule by which the accounting officers of the navy department will adjust the claim of the defendant, should it also be settled that the paymaster of the marine corps is entitled to the same compensation as an army paymaster; which, however, for the reasons I have already given, does not appear to me to be the case.

It was contended, also, by the defendant's counsel, that the joint resolution of congress, of the 28th (29th) of May, 1830, which impliedly sanctioned the allowance which had been made, of the pay of major of infantry, to the defendant, by directing such pay and emoluments as had been, before that time, received by the officers of the marine corps, to be allowed to them thereafter (for a limited period, but by a subsequent resolution extended indefinitely), ought not to be restricted to such compensation as had been actually received, but should be extended to such compensation as ought to have been received, and that such compensation ought to be that of a major of cavalry. But the wording of the resolution will not admit of such construction. Congress knew, from the reports of the secretary and fourth auditor, what had been received, and what was claimed, and they limit the amount to what had been received, and did not extend it to the amount claimed, so that there is nothing in these resolutions showing any design in congress to extend the compensation further than the plain sense of the words of the resolutions import. But if those words could afford any inference that congress meant to give their approbation to such compensation as ought, by law, to have been allowed, and not to such "as had been received," still the question is open for this court to say what ought to have been allowed. No aid, therefore, in support of the claim, can be derived from these resolutions, but the reverse; and as far as those resolutions can be considered as any declaration of the legislature as to the meaning of the several statutory provisions, in regard to the defendant's compensation, they go to sanction what was already done, and to repel the additional compensation now claimed. They have granted a boon, not a right founded on preceding laws; though their grant may be based on equitable principles. It was a case where there was no reason to make a distinction between officers of the same rank, and with equal and similar duties, but which the legislature had not provided for, and which defect we could not supply; and were the accounts of the defendant not closed at the navy department, and those resolutions of congress, out of the way, and I was reduced to the necessity of now saying what compensation the law allowed to the paymaster of the marine corps, I should be compelled to say that I have seen no subsequent act of congress, which, without a most strained and unreasonable construction, repealed that of the 16th of April, 1814, and that, consequently, that act afforded the true and only rule by which such compensation should be settled.

I have thus, as far as my memory served me, noticed all such material points as appear to me to have been urged by the defendant's counsel, and written, very hastily, to be sure, from the shortness of time, such remarks as the very imperfect consideration

of the statutes on the subject suggested to me. I must conclude, as the result of my consideration of the case, that I cannot give the instruction prayed for by the defendant's counsel. But, as this is a case different from that decided in the court of Missouri, by Judge Peck, which involved the pay and emoluments of a paymaster of the army proper, in which, I understand, there is an appeal to the supreme court; and, as the decision of the supreme court, in that case, may not settle the disputed points in this; and, as the claim of the defendant involves a sum of consequence, in which an appeal will lie, I should be gratified if the matter could be so arranged as to make the United States appellants, as they possess faculties and facilities for prosecuting an appeal, for want of which the defendant might be unable to prosecute his appeal, and so lose the benefit of a revision of our judgment, by that tribunal.

Mr. Coxe, for defendant, then prayed the court to instruct the jury, that the act of the 16th of April, 1814 (3 Stat. 124), does not preclude the defendant from the allowance claimed.

Which instruction THE COURT (MORSELL, Circuit Judge, doubting) refused to give, being of opinion that the second section of that act has not been repealed or altered, so far as regards this case, except so far as it is repealed or altered by the resolution of the 29th of May, 1830; and that there is no evidence, before the jury, to show that the pay, substance, emoluments, and allowances claimed by the defendant, in the said items, No. —— had been received by any paymaster of marines previous to the 1st of April, 1829.

The United States, having given notice to the defendant to produce his books of accounts kept by him, as paymaster. THE COURT (nem. con.) said that these were to be considered public books, so far as to authorize the United States to use them in evidence.

Mr. Coxe, for defendant, then prayed the court to instruct the jury, that it was not competent for the fourth auditor, in 1829, to direct a recharge against the defendant, of the item of $7,564.13, which had been passed to his credit, in the treasury account, settled in 1823. Or, if the court should refuse that instruction, that they would instruct the jury, that, before the defendant shall be precluded from the benefit of such credit, in the said account of 1823, the jury must be satisfied, beyond any reasonable doubt, that such original credit was allowed by the proper accounting officers who settled the same, by fraud, imposition, or mistake.

THE COURT (nem. con.) refused the first part of the instruction, and granted the second; and CRANCH, Chief Judge, delivered the following opinion:

In the settlement of the defendant's account. No. 3,961, with the United States, in April, 1823, he was credited "by R. M. Desha," his predecessor, the late paymaster. "for amount paid Captain Samuel Miller, $7,564.-13." The voucher for this item consists of a receipt, in these words· "Received vouchers from Major Miller, amounting to seven thousand one hundred and eleven dollars and thirteen cents, which vouchers were acquired during my visit to the western country, and which were paid by him. Washington, 31st January, 1820. R. M. Desha, P. M. M. C." "Admitted, C. F." Upon which was the following indorsement: "The amount of the within receipt has not been placed to the credit of Major Miller, on the books of R. M. Desha." "Joseph L. Kuhn, P. M. M. C." And of two receipts given by Major Miller, to Mr. Desha, for amount of his services as acting quartermaster of marines, in behalf of Colonel Grayson, amounting to $453; upon which receipts were similar indorsements that the amount thereof had not been placed to the credit of Major Miller, on the books of Mr. Desha. The defendant was the successor of Mr. Desha, as paymaster of marines; and sundry balances due by officers of marines, on Mr. Desha's books, for advances made by him to them, were transferred from his books to those of the defendant, for collection, or stoppage out of their future pay and emoluments; a list of which balances the defendant had sent to the fourth auditor, on the 19th of November, 1822. Mr. Desha, when he went out of office, was largely indebted to the United States; and there seems to be evidence tending to show an understanding, at least, between Mr. Desha, the accounting officers of the United States, and the defendant, that, when the defendant should receive those balances, they should be passed to his debit, and to the credit of Mr. Desha, upon the books of the United States.

Among the balances, thus transferred, was one of $12,481.74, against Major Miller, to whose credit the $7,564.13 ought to have been entered upon the books of Mr. Desha, and, if they had been so entered, the balance of Major Miller's account, transferred from Mr. Desha to the defendant, would have been so much less, namely, $4,917.61, instead of $12,481.74. The sum of $7,564.13, if the proper vouchers had been produced, should have been placed by the proper accounting officers of the United States to the credit of Mr. Desha, to whose debit the money was placed, out of which it was paid: and the accounting officers of the United States could not be justified in passing that sum of $7,564.-13 to the credit of the defendant, unless they should, at the same time, charge him with the balance, $12,481.74, appearing against Major Miller on Mr. Desha's books, and transferred from them to the books of the defendant. And, it seems, from a memorandum made in the dissecting book, by Mr. McDaniel, late accounting clerk in the fourth auditor's office, that he supposed it was to be passed to the debit of the defendant and to the credit

of Mr. Desha, "as so much of the balances on Desha's books, transferred to the defendant." The memorandum is in these words: "Kuhn, ch. to Desha for these sums," ($7,111 and $453,) "as so much of the balances on Desha's books, transferred to Kuhn." In the same settlement of the account No. 3,961, the defendant is debited $22,218.53, "to R. M. Desha for stoppages on account of balances transferred on paymaster's books." The voucher for this charge was a letter from the defendant to the fourth auditor, directing him to charge him and credit Desha for that amount.

It is evident, however, that this item did not include the sum of $7,564.13, which was not a stoppage, with which the defendant would charge himself, as he had received nothing for it. When, therefore, it was entered to the credit of the defendant in the account No. 3,961, it stood alone without any corresponding debit, and was a palpable error; and if it was not corrected in any intermediate settlement, the debit in the settlement (new series, No. 1,133) of the 9th of June, 1830, is correct, in these words: "for this sum improperly debited to Desha, and credited to J. L. Kuhn, in the settlement of his account No. 3,961, reported May 1, 1823, $7,564.13." The subsequent statement, charging the defendant with $60,667.92 for balances transferred, and deducting therefrom the several items there stated, does not alter the case as to the item of $7,564.13; for that statement is only a transcript of the defendant's own account as stated with Mr. Desha, excepting the following items, which constitute the balance of $3,455.44:

| | |
|---|---:|
| Overcharge to Captain Gamble.... | $ 350 00 |
| "       to Thomas A. Linton | 220 00 |
| Commission, at 5 per cent. on $33,835.34 ................. | 1,691 76 |
| Balance due Desha by Col. Wainwright .................. | 1,093 68 |
| And an error in adding up the balances ................. | 100 00 |
| | $3,455 44 |

In that statement the sum of $7,564.13 is very properly deducted from the list of balances.

The court, therefore, refuses to give the instruction prayed by Mr. Coxe, for the defendant, "that it was not competent for the fourth auditor, in 1829, to direct a recharge against the defendant of the item of $7,564.13, which had been passed to his credit in the treasury account settled in 1823."

MORSELL, Circuit Judge, concurred.

THRUSTON, Circuit Judge, gave no opinion.

Mr. Key, for the United States, having concluded his opening argument to the jury upon the evidence, prayed the court to instruct the jury, "that the papers offered in evidence by the plaintiffs and defendant, in reference to the item of $7,564.13 do show, in the opinion of the court, that the credit given to the defendant at the office of the fourth auditor, for that sum in the settlement of 1823, was erroneously given."

But THE COURT (THRUSTON, Circuit Judge, absent) refused to give the instruction; because the written evidence was connected with a great deal of parol evidence, and the question, whether the credit was "erroneously" given, was a question of fact to be decided by the jury from the whole evidence, written as well as parol.

THE COURT (MORSELL, Circuit Judge, absent), at the prayer of Mr. Key, for the United States, instructed the jury that the act of 1814 gives the paymaster of the marine corps, a certain sum, in lieu of all emoluments; that that law was in force from 1821 to 1829; and that the defendant ought not to be allowed the pay, &c. of a major of cavalry under the said act; and that the defendant, upon the evidence aforesaid (meaning the whole evidence,) is not entitled to claim any allowance, in this suit, for the pay, &c. of a major of cavalry.

Verdict for the United States, $10,373.03.

The defendant died soon after the verdict, and no writ of error was prosecuted.